# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. RAMIUS HARDIMAN, Defendant. | Case No. CR13-0037 ORDER FOR PRETRIAL DETENTION |

On the 25th day of March, 2014, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Daniel C. Tvedt. The Defendant appeared personally and was represented by his attorney, Jill M. Johnston.

## I. RELEVANT FACTS AND PROCEEDINGS

On June 5, 2013, Defendant Ramius Hardiman was charged by Indictment (docket number 3) with being a felon in possession of a firearm. At the arraignment on March 14, 2014, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on May 12, 2014. Defendant waived his right to a detention hearing, subject to his ability to request and receive a prompt hearing at a later time. On March 20, 2014, Defendant asked for a detention hearing, and a hearing was scheduled on March 25, 2014.

Special Agent Thomas Reinwart of the Federal Bureau of Investigation testified regarding the circumstances underlying the instant charge. On May 8, 2013 at approximately 1:00 a.m., two uniformed officers approached three persons walking on a road in southeast Cedar Rapids. One of the persons was Defendant Ramius Hardiman.

Another person was Defendant's brother and co-Defendant, Demetrius Hardiman.[1] When officers initially instructed Defendant to keep his hands out of his pockets, he did not immediately respond and was told again. As officers approached, Defendant made a sudden movement and was then "secured" in handcuffs for the officers' safety.

Officers observed a bulge in Defendant's waistband, which was determined to be a .9 mm pistol. According to Special Agent Reinwart, the hammer was "cocked," but the safety was on. The gun was removed from Defendant's waistband and an officer asked Defendant how to "make it safe." Defendant instructed the officer to drop the magazine from the weapon. Some ammunition was found in the magazine and there was a round in the chamber. Demetrius Hardiman later admitted to law enforcement that they were out that night looking for cars to burglarize.

Defendant was not arrested on the night of May 8. Defendant was on probation for involuntary manslaughter at that time, however, and he was arrested for a probation violation two days later. Defendant remained in state court custody from May 10, 2013 until his arrest on this federal charge on March 14, 2014.

Defendant is 21 years old, has never been married, and has no children. He was born in California, but has lived most of his life in Cedar Rapids, Iowa. His parents, who are divorced, reside in Linn County. If released, Defendant would live with his father. Defendant has been unemployed since his arrest in May 2013, but believed he could obtain employment as a cook at the Lost Cuban restaurant in Cedar Rapids.

Defendant is in good health and has no history of mental or emotional health concerns. Defendant told the pretrial services officer that he has not smoked marijuana since August 2011 and has not consumed alcohol since March 2012.

---

[1] Demetrius Hardiman has previously pleaded guilty in this case to disposal of a firearm to a felon, and was sentenced to serve 41 months in prison.

On November 8, 2010, Defendant was out drinking and joy-riding with friends. He purposely drove his car at a high rate of speed on a steep hill to become "airborne." Defendant lost control of the vehicle, causing it to roll several times and, tragically, resulting in the death of his passenger. As a consequence, Defendant was convicted of involuntary manslaughter and given a five-year suspended prison term.

On March 16, 2012, approximately five months after having been placed on probation for involuntary manslaughter, Defendant shot a male victim with a BB gun during a drive-by shooting. The victim pursued the car in which Defendant was riding and additional shots were apparently fired. As a consequence, Defendant was convicted of assault causing bodily injury and criminal mischief in the fifth degree. He was sentenced on October 22, 2012.

After being convicted and sentenced for the shooting charge, Defendant's probation for involuntary manslaughter was revoked on October 31, 2012. Approximately four months later, however, he was released to "shock probation" on February 25, 2013. It was approximately ten weeks later that Defendant was found in this case with a .9 mm pistol tucked into his waistband while prowling the streets at 1:00 a.m.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves

3

an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant;

(3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

### B. Analysis

Turning to the facts in the instant action, Defendant is charged with being a felon in possession of a firearm. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(E).

Regarding the second step, the weight of the evidence against Defendant could hardly be stronger. Two officers will apparently testify that they took a .9 mm pistol from Defendant's waistband. It is undisputed that he is a convicted felon and there is apparently no dispute that the weapon was brought across a state line. Of principal concern to the Court, however, is Defendant's inability to comply with the terms of supervision. Within approximately five months after receiving probation on an involuntary manslaughter conviction, Defendant was shooting (albeit with a BB gun) at a male victim during a drive-by shooting. Defendant was then sent to prison for four months, but released pursuant to "shock probation." Nonetheless, within approximately ten weeks, Defendant was found after curfew with a .9 mm pistol tucked in his waistband and a round in the chamber. While Defendant has ties to the community and is an unlikely risk of flight, the Court believes that his release prior to trial would constitute a danger to the community.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds by clear and convincing evidence that no

condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the Defendant's oral request for a detention hearing (March 20, 2014) to the filing of this Ruling (March 25, 2014) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 25th day of March, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA